Next case of the morning is number 18-10289, Hoyt v. Lane Construction Corporation. The Court will take a brief break after this argument. Mr. Cooper Thank you, Your Honor. This case has more issues in it than a law school federal procedure exam. I've counted at least four distinct major issues on the law of removal that are brought up in this case, including the voluntary-involuntary rule, the waiver rule, the improper joinder rule, the bad faith dismissal rule, and then finally, the caterpillar rule regarding whether or not if the Court reverses this, it goes back to the state court or stays in the federal system. Well, how about if we just blow right by those and get to the summary judgment? We can go to the summary judgment. I'm just trying to I actually have a question about Sure, Judge. If this case were remanded to the state court and a final judgment were entered against Lane, would you be able to appeal the CEN summary judgment? We would. Okay. So you have not settled it? It is not settled. This letter about costs is just about costs. If you read that, if you read the footnote in Judge McBride's opinion where he alludes to settlement, all the Rule 11 agreement that he It's just about costs. It's about costs. No, and that's not an enforceable settlement agreement on anything other than costs. I get that. I just wondered if hidden beneath the ground there was. So CEN's summary judgment victory, if you will, is still interlocutory if it goes back to state court. Now, could you have appealed that to us? Because I'm wondering how we would have jurisdiction on the CEN summary judgment. There is a case called the District of Columbia Court of Appeals v. Feldman. United States Supreme Court 460 U.S. 462 decided in 1983 The Rooker-Feldman? I'm sorry? The Rooker-Feldman-Feldman case? I don't know which Feldman it is. But anyway, they said that if there was a state court judgment, as there was in that case, I think it was the District Court of Columbia. But anyway, they said it was not appealable through the federal system in that case. Have you forfeited any argument about CEN by not raising it in this court? At least as it applies to this question about the I don't believe so. I think that, of course, the judgment is still in the trial court or the state court. Obviously, when the case was removed, that has been stayed. No further proceedings can take place in the state court as long as this case is here. I understand that, but Judge McBride notes it in his opinion, the relevance of the CEN judgment. And what he seems to think is the non-appealability. That is, that there's no way that CEN is coming back into this case. And you didn't say any, as far as I can find, anywhere in the briefs before us, anything about CEN. We disagree. We think it is coming back into the case because we think the case should be going back. Well, wait a minute. I mean, come on. But look at the Snapper case, Judge. No, no, no, no. I mean, there's very little case law. My practical point is, A, I think you could have, but you didn't seek an interlocutory appeal against CEN. And, B, CEN had nothing to do with the facts here, right? They had absolutely nothing to do because there was no evidence summary judgment. Actually, the evidence that was put on was CEN was hired to tear down a culvert number two. Where this happened was on culvert number eight. Clearly, they had no work on culvert eight. But the allegation was they took the concrete that they tore out and they disposed of it at culvert eight, and that's what created this lake where Mr. Hoyt went off the road and drowned in the lake that wasn't supposed to be there, that was created by a bunch of concrete blocks that had to come from someplace. And we believe they came from culvert two. You had not a shred of evidence. That's what the trial court judge. That's my point. Okay. I just wanted to clarify. Okay. But the question is, people have theories all the time which they hope they can prove. Sometimes they can't. Now, what judgment Bryde did in this case, he said because you lost that summary judgment, he equivocated the loss of the summary judgment with bad faith joinder, or improper joinder I think is the new terminology. And we know that that is not the law. We know, for example, I think it's the Sixth Circuit has said that the standard for improper joinder is much higher than the summary judgment standard. We also know that there was a district court case in Montana which said a plaintiff didn't even respond to a summary judgment in state court, and the court there said that is not evidence of improper joinder. While we're talking about the bad faith finding and the law school exam nature of this case, let me add a question, which is what is the standard of review? What is the standard of review? I think it's set out in Gash v. Harford in this case. The standard review is first the plaintiff's, I mean the defendant has the burden of establishing federal court jurisdiction. Number two, because of the conflict of federalism between a state court that has jurisdiction and the federal system, they must, this court, Judge McBride, must indulge in every inference as far as fact issues and as far as state law in favor of state court jurisdiction. That is the standard review. Let me be clear. What is the standard review that this court applies to Judge McBride's decision? Smallwood. Fact issues, clear error, legal issues, de novo. Well, I think it's kind of like a summary judgment, which would be de novo. De novo is to a decision whether to remand, right? Correct. My question is he found, as a matter of fact looks to me, that your client exercised bad faith, and so my question is what is the standard review as to bad faith finding? Well, first, I think before we get there, we have to ask did the judge apply the right standard review? The only evidence was an affidavit from Mike Simpson who said as far as the dismissal, if we're talking about dismissal of Storm, it was he had been in negotiations. They were coming up onto a pretrial deadline. He thought he'd gotten as much money as he could from them. It wasn't worth it to accept the money and have them appear as a settling person on the charge under Section 33.012 of the Civil Practice and Remedies Code, and he could either leave them in and have two lawyers shooting at him, or he could take the money and have them submitted, or he could dismiss them, and he would solve both problems. There's still the empty chair, though, right? There still is the empty chair, but they're going to be pleaded as a responsible third party. Then they're going to have to deuce evidence. I'm sorry. What was the consideration that they received for the dismissal of Storm? Zero. Zero. You said take the money. They had offered money, but it wasn't enough to justify having them on the charge. So a $0 for dismissal two days after the one-year deadline. I don't know if it was two days before the pretrial deadline and 14 days, 13 days before the trial. And I believe it was those were the deadlines that were governing the decision, not so much the one-year deadline because this happened on a Friday. This happened on a Friday. Monday, all the charges, all the remedies, all this stuff was going to be due. So it was just a coincidence that it just happened to be two years after the one-year deadline. I'm sorry, two days after the one-year deadline. Yes, and this is the problem. You had this affidavit. The judge disregarded it in its entirety and bought assertions and theories by Lane that were supported by no evidence. I don't think there is any evidence. And, in fact, I think he's twisted and reversed the standard of review that is supposed to be followed when there is a removal, that is, to look at the evidence in the light most favorable to the plaintiff. And same thing as far as the state law issues. But we can at least agree that he made a factual finding. He did. A credibility finding. I'm sorry, Judge, I couldn't hear. I'm sorry, never mind. Okay. I'm sorry. My hearing is not like it once was, and I apologize. Okay, but we don't even really get to Storm if C.E.N. was properly joined. If C.E.N. was properly joined, then we have the involuntary rule. Clearly were involuntarily. It was a summary judgment. The question was really the improper joinder. That's right. Then we get to the question. What evidence did you present in the state court about C.E.N. in response to the motion for Storm? We presented in response to the summary judgment that they performed concrete work at Culvert 2, which ended up at Culvert 8. Our theory was that they had to tear up this culvert. There was some evidence presented. It wasn't completely. What was the contracts and the fact that this concrete, which ended up at Culvert 8, had to come from some source, which caused the dam, which caused the lake. How did you show that it came from Culvert 2? We did not. That was the problem that the judge had, I think, and why he granted the summary judgment was to be able to identify that, indeed, the concrete came from Culvert 2 that ended up on Culvert 8. Can I ask you about the voluntary involuntary theory? I mean, there is apparently a split of authority on that. We did some independent research, and we found a couple other cases on that. And my problem with that theory, if the Fifth Circuit has room to decide it, is that suppose you had a more classic sort of fraudulent joinder case against, let's say, the manufacturer of some medicine, and you implead the doctor and you implead the local pharmacist just to make sure you're going to stay in state court, and the district court rules, that doctor didn't even see this patient to prescribe in this medicine, no evidence, summary judgment. Well, you knew that, too. Your client knows that. Now, just wait a minute. Your client has that theory, too. But that would be an involuntary summary judgment. But why should that be held against the defendant when it is no more secure or no more probative of a state court case than a typical fraudulent joinder? Just because there is a summary judgment. Now, I think it's the—make sure I get the right case. I think it's Tedford. No, that's wrong. There are cases in the involuntary-voluntary where, you know, they do assert fraudulent joinder. I don't think the two are necessarily the antithesis of each other. So what you're saying is you can have an involuntary dismissal that is a fraudulent joinder. If there is a showing— And that would solve the concern that Judge Jones articulated. If there is a showing of fraudulent joinder at that point in time. Well, all fraudulent means is no possibility of recovery, and it seems to be no evidence in the state court is pretty close to that. Well, then, if that were true, every— Well, it's actually a different time period, right? In state courts, you can't file a no-evidence motion until the person's had time for discovery. So you may have thought when you filed the case that, in fact, there was evidence that could be found about CNN depositing the concrete in the wrong place, and then you couldn't find it. So then the question would be where do we examine that analysis? Because it's not exactly a 12B6 in state court. You have to have time for discovery. Correct. Before a no-evidence summary judgment can be heard. And, you know, just because a plaintiff is not able to meet its evidentiary burden doesn't mean that there was fraudulent joinder of that party at the inception of the lawsuit. Well, again, it's not a bad-faith test. It's a test, subjectively speaking. For a fraudulent joinder, it's no possibility of recovery. I understand that. Is the standard that this court adopts. Right. It's a Flagg v. Stryker y'all didn't cite, which is an en banc decision by our court a couple years ago, reversing a panel decision I was on, so I remember it well, which says you look at the time of filing, was there no possibility of recovery, and you look at the pleadings, and you only pierce the pleadings if there is some reason to think there is some lie in the pleadings. And this was not done by Judge McBride at all. I agree with that. And, in fact, I think, again, going to the standard review under Gash v. Hartford, I think he looked at it, no inferences were given to the plaintiffs. In fact, every inference was against the plaintiff, which I think in a summary judgment context, in a removal context, that is not the way you look at the evidence under this standard of review. I want to go back to, I asked a question earlier that I'm not sure we got finally to the bottom of, which is Judge McBride talks about CEN, you referenced the footnote, right, where he says that CEN can't come back into this case because apparently it's gone. And my question to you is, is any of this properly before our court, given that you didn't challenge that in your briefs before us as the appellant? Well, he dropped a footnote to the record about there being some settlement. You look at the record, and you can see that that is simply not the case. CEN is crucial to your case, and you're challenging the district court's decision to deny your remand, to deny remand. Correct. And so, but you didn't challenge what he had to say about CEN. And so I'm just trying to figure out if it's properly before us or if it's been forfeited. Well, I mean, our position is CEN is still properly before the trial court, I mean the state court, let me make sure of that, and that, you know, if the judge mentions any footnote which is not really relevant, it wasn't, it was dicta at best. I think in the second opinion denying the motion to remand, I don't think it's material to the relief that we get here. All right. When you get up on rebuttal, I'd like you to explain one fact on summary judgment, which is that supposedly, and maybe there's a disputed issue about it, supposedly on the one side of the road opposite the culvert, the road bed slanted downward, and therefore how could the water be crossing the road to create the ice? And you can address that on your rebuttal. Okay. Thank you. Okay. Mr. Myers? May it please the Court, my name is Brett Myers, and I am presenting the argument on behalf of Lane Construction. As the panel has noted, the issue in this case are the, there's the remand issues and then there's the summary judgment issues. And I'm going to focus on the remand issues in which I believe to be two separate issues. Number one, the one-year deadline. The question was, what other evidence was there? And the appellants pointed to the affidavit of Michael Simpson. Well, indeed, there was a lot more evidence that Judge Breid could have looked at. First and foremost, plaintiffs never deposed any storm witnesses. None of the plaintiffs' experts. Did they not have some scheduled? They had the schedule, but they never did it. Now, the schedule. Well, I wouldn't be the first to wait until the last minute. I was a state trial judge for eight years, and I watched a lot of people wait until the setting was a week away to start running around getting ready. So this is not unusual for the trial date to propel a lot of activity. Settlement activity, discovery activity shouldn't be the way it is, but is the way it is. So why is that so shocking that they would be running around at the last minute trying to get stuff done? Well, we go back to February before the September non-suit of storm. We go back to February. There was witness testimony from Lane that storm was not responsible for maintaining the silt fences once storm installed the silt fences. The installation of the silt fences occurred months before this accident, so storm was not responsible for maintaining the silt fences. Plaintiffs knew that in February. Plaintiffs designated an expert in March, two experts in March. Neither expert was critical of storm in March. Plaintiffs deposed. But storm still offered money. So storm obviously thought there was a reason to do that. Well, it's going to cost how much to try the case. Any number of reasons why a party may decide to settle, I do not believe it would be probative of whether the party believes the claim has merit. There's reasons to settle that go well beyond what a party believes its potential exposure could be. Was it the discovery deadline? Was it whether you're still doing discovery 12 days before the trial? Well, we had a lot of moving parts, and so it would have, if the depositions had been scheduled, then surely we would have participated in those depositions. Was there a discovery deadline? There was a discovery deadline, but we had blown the deadline. Oh, by agreement. By agreement, we're continuing to conduct discovery. And that's very typical in state court. Unfortunately, yes, unfortunately. I guess things could have changed in the ten years I've been out, but that's my memory. It happens. So the issue then is with respect to no experts designated, with respect to Storm, and this relates to the one-year deadline, right? Is there a reason for Judge McBride to extend the one-year deadline based on the facts of this case? Judge McBride concluded that there was, and he pointed to the fact that they had not prepared the case. He pointed to the fact that, first and foremost, they non-suited the defendant 18 days before the state court trial suit was supposed to start. And that, according to Judge McBride, was enough to equitably toll the one-year deadline, all right? This is not a jurisdictional issue. The one-year deadline is a procedural issue subject to tolling, subject to waiver, subject to any number of exceptions. So the one-year deadline did not apply. Judge McBride filed a basis to extend the one-year deadline. And so now we move to the issue of improper joinder, all right? The first issue, the first motion to remand dealt strictly with the one-year deadline. Judge McBride denied that motion to remand. The second motion to remand dealt with this improper joinder issue. According to the Hoyts, Lane was required to identify in its notice of removal this notion of improper joinder. That's incorrect. We would have been required to include it in the notice of removal if we had needed the improper joinder argument to remove a non-diverse defendant from the case. At the time Lane removed this case, it was a case between the Hoyts and Lane. CEN had already been— Here's the problem that I have with that analysis. It's just my memory of how state court stuff works. Okay, let's say this had never been removed. CEN received summary judgment in its favor. That is not interlocutorily appealable. There is no 54B in state court. And so the only way for Hoyt to appeal that would be to wait for the trial, win or lose against Lane, and then appeal. Would you agree with that? We were just in state court. We never went to federal court. And we proceeded with either a summary judgment in favor of Lane, a directed verdict, a jury verdict, whatever. That's the point. That's the first time that they could have appealed CEN. Is that correct? In my belief, Your Honor— Your understanding of state law. The appellate rights for the Hoyts would have been to sever CEN into a separate cause of action, receive the final judgment against CEN, and then proceed to appeal that final judgment. You're not required to do that. You're not required to do that. You're not required to do that. And the judge is not required to grant a severance. And, in fact, it is not standard procedure. You would agree with me that had this stayed in state court and had the case gone to trial against Lane or whatever happened with Lane, once Lane was disposed of, there would have been a final judgment, and then they could appeal the CEN summary judgment. I do agree with you. Okay. So CEN is still a party to the case, because otherwise how the heck can they be appealed? CEN— They were not dismissed. They were granted to take nothing that was interlocutory and not appealable at that point. Okay. Right? Now, the trial judge entered summary judgment. No evidence of summary judgment and traditional summary judgment. All right? So now we are at the second motion to remand. Right? Now we have to somehow address the CEN in this case. All right? So under the Fifth Circuit's test, the standard is there must be no reasonable basis for the court to predict that appellants might be able to recover against CEN. All right? So it's—procedurally speaking, we're in a very unique situation. All right? Because we already know what the state court has done. Judge Brey does not have to predict what the state court will do. He already knows. But we don't know what the court of appeals would do. So then— In fact, summary judgments get reversed all the time. I know this well in state court of appeals. So the question then becomes, Your Honor, what does Judge McBride do? How does Judge McBride predict what the court of appeals will do? In a sense, what Judge McBride has to do is has to look at the summary judgment evidence. What will the court of appeals do— Okay, but that's not what we said in Flag v. Stryker. We said you look at the time of filing. Way back when it was filed in state court, was there no possibility of recovery? But there's also the rule in the federal—is it in the statute, I believe, that when a pleading renders a case removable, the defendant may remove. That is correct, Your Honor. That is correct. Okay, but C.E.N. was never taken out of the case by Hoyt, nor are they no longer a party, because in the state court, that case could have been appealed. If we remand today, it can be appealed. So what I'm saying is Flag v. Stryker laid out a process that I don't see that Judge McBride followed here, which is at the time of filing. That was critical, essential to the decision in Flag v. Stryker was at the time of filing. Was there no possibility of recovery? That's what it rested on. That's an en banc decision of this Court that neither of you all cited that's critical to this. And I don't see that here. There was not no possibility of recovery against C.E.N. at the filing. So it's not a backward-looking, now we know how things came out. I mean, if they'd gone to a jury trial and lost, we wouldn't say, well, okay, there was no possibility of recovery because a jury found against him. So this is only after the fact that we know that they would get summary judgment in state court. That's not improper joinder. We are not trying to – okay. So it's not at the front end of the case. That is absolutely correct. Now what we're dealing with is a case that is in federal court. Does the federal judge have jurisdiction? What the Fifth Circuit says is that the judge must apply this improper joinder theory. If we apply the improper joinder theory, the standard is no reasonable basis for the court to predict that the Hoyts might be able to recover against C.E.N. At what point? At the time it was filed. I think you can agree to disagree on that point. Okay. Thank you. In which case, Judge McBride did the analysis. Disagree with an en banc decision of the Fifth Circuit, have at it. Your Honor, I'm merely saying that as we see here today, the task before Judge McBride was to review whether or not there was a reasonable basis for the court to predict that C.E.N. could recover. Isn't it right that he said what is the reasonable basis and that he finds – and I can give you the record site if you want it. It's 4383. He finds that the Hoyts have not made any argument that there is a possibility of recovering against C.E.N. He speculates in a footnote that the reason for that is that maybe they settled, but he says that they didn't make any showing. In the briefs before us, they talk a lot about C.E.N. They talk a lot about how the summary judgment order was wrong, but they don't say anything about appealing it or any reasonable probability that they will be able to recover against C.E.N. So sort of tangential to all of this, I'm just trying to figure out if any of this is even before us or if it's been forfeited by your friends on the other side. I want to answer your question as directly as I can, and I don't know that I have a direct question. But what I will say is this, is that McBride looked at the summary judgment evidence, concluded that the summary judgment evidence rendered it impossible that the Hoyts could recover from C.E.N. Also pointed out, Judge McBride also pointed out the difficulty of obtaining summary judgment in Texas State Court, and specifically the 271st District Court. And so if this court, as I believe it is required to do, evaluates whether or not the Hoyts have a reasonable basis for recovering against C.E.N., this court will review the summary judgment evidence and will reach the same conclusion that the State Court judge, the 271st District Court, and Judge McBride reached. So from that perspective then, Judge McBride has jurisdiction. He now has jurisdiction in this case. The question then becomes, was the summary judgment proper? Well, answer the issue I mentioned, because both sides cited a bunch of evidence, and it seemed critical to me. So after the State Court summary judgment proceeding, the Hoyts produced a three-dimensional scan of the accident site. That three-dimensional scan of the accident site would allow us to look at any particular point in the accident site compared to any other point in the accident site. What do you mean after the summary judgment? After the State Court summary judgment proceedings where Lane's motion for summary judgment was denied. Oh, okay. Additional evidence came forward. The plaintiffs produced their experts' 3D scans of the accident site. That 3D scan would allow us to then take a point here and compare it to a point here and compare the elevations. Lane's expert took that 3D data and was able to determine that the entire eastern side of this road, the allegation is water flowed from east to west, the entire eastern side of this road, the lip of the road, the edge of the road, was higher than the ground adjacent to it. Therefore, water could not flow up over the road, could not flow uphill, and then come down east to west, as the plaintiff's theory proposed. All right? They have an expert that says if the water got to a certain level, then it could do that. Presumably, we're talking about some type of flood of biblical proportions to do that, right? But the thing about it is, is their expert did not identify what that particular level was, right? It did not tie anything that relates to this accident to the water actually achieving the level necessary to get up over the road and then come down east to west as the plaintiff's… Well, is there a legitimate issue of fact based on their testimony of their people who had actually driven the road that morning that the only sheet of ice they encountered was right at that location? I'm going to answer the question this way. This is a premises liability case. One of the fundamental elements in a premises liability case when we're dealing with a licensee, which is not in dispute here, Mr. Hoyt was a licensee. One of the fundamental issues is whether Lane had actual knowledge of a dangerous condition. Now, not only a dangerous condition, but it has to be an unreasonably dangerous condition. The Texas Supreme Court has said ice naturally forming is not an unreasonable condition as a matter of law. Ice naturally forming is the result of a meteorological condition. All right? There's no evidence that Lane knew there was ice on the road that morning. There's no way they can show Lane had actual knowledge of the ice on the road that morning, and that's what's required when you're dealing with a licensee under Texas premises liability law. There's just simply no evidence of that. All right, but in the state court proceeding, they say you agreed that there were fact issues about that. Well, to say we agree that there were fact issues about it is in the context of a summary judgment hearing. Right? Lawyers can make points and make arguments as they see fit. These aren't factual concessions that were made by anybody. The concession was that there was a fact issue, not that there was a – that the fact was as the plaintiff stated. Is that what you're trying to say? I think what I'm trying to say, Your Honor, is that when attorneys make summary judgment arguments, attorneys will decide strategic reasons one way or the other why they don't want to pursue a particular ground or why they believe one particular ground may be more effective at that hearing. Either way, it's an interlocutory proceeding. We get to federal court and judgment. Well, is it interlocutory from the court standpoint? Is it equally interlocutory from the lawyer's standpoint? Because I don't hear you making the – agreeing with what I say was does a judicial admission comprehend something stating something? Does it make something a fact issue because you say it's a fact issue as opposed to an evidentiary admission of the fact? You see what I'm saying? I do, Your Honor. And I would say it does not – right? It does not produce that result simply because summary judgment proceedings are questions of law. We're arguing – we're making legal arguments, questions of law. We can't – as attorneys, we can't stipulate about questions of law. Law is law. Law is what it is. We can stipulate whether it was raining outside. We can stipulate whether the light was red or the light was green, right? But we can't – we can't go to the next step, which is stipulate that there is a fact issue when that is a question for the court to rule on. And did I understand you from before about the 3D model, that that comes after the discussion about whether there's fact issues? Correct, Your Honor. That's correct. That's new evidence that came in after the initial state court summary judgment proceeding. Let me ask you one other thing. I hate to re-plow this ground, but are you familiar with a case called Crockett v. Reynolds, Tobacco, 436F3-529, regarding voluntary involuntary? I'm not sure that either party cited it. Your Honor, it does not – I don't. Well, you both might want to look it up. Crockett, 463F – sorry, 436F3-529 talks about removability in the context of a severance.  Finally, Your Honor, with respect to the summary judgment issue, there is no evidence that Lane had any actual knowledge of a dangerous condition. We don't believe there was an unreasonably dangerous condition because ice naturally forming as a result of a meteorological event is not an unreasonably dangerous condition as a matter of law. There's no evidence that Lane had actual knowledge. No one had been on the job site for 10 days. The accident itself occurred between 4 and 4.30 a.m. in the morning. There were no workers present at that time. Mr. Hoyt was driving to work and encountered a patch of ice. And again, Lane had nobody there and was not working on the job site. Now, Lane also moved for summary judgment under its Chapter 97 defense. The Chapter 97 defense says that a contractor with TxDOT is immune from liability if the contractor can show that it was in substantial compliance with the condition that approximately caused the injury. The Hoyts have not told us what that contractual condition was, but let's assume for the moment it has to do with water draining across the road or the size or depth of this pool next to this culvert. The evidence is clear, unequivocal, that TxDOT never complained, never pointed out to Lane that it was not in compliance with the contract. TxDOT had people on the job site inspecting the job site every day, including the 10 days where Lane was not working prior to the accident. There was no indication from TxDOT or report from TxDOT or citation from TxDOT that Lane in any way was not in substantial compliance. There is the case, the Brown v. R.K. Hall case, which the evidence in the Brown v. R.K. Hall case and the evidence in this case are almost identical with respect to the Chapter 97 defense. I see that my time is now over, and I appreciate the Court's time. Thank you. All right. Thank you. Mr. Cooper? I will get to the judge's question. I just want to address what he just finished up on, whether or not they were in compliance with the contract, Record on Appeal 476-5023-31. TxDOT inspected on January 2016, two weeks after the drowning indicated their stormwater management and drainage measures they employed had not been installed correctly and were not in compliance with the applicable standards. Likewise, TxDOT correspondents threatened to shut this job down because Lane's failure to timely schedule drainage-related work. That's at Record on Appeal 4767-5033-35. Number two, Crockett case. We addressed the Crockett case on pages 15 and 20 of our opening brief. As my recollection, that had to do with a voluntary severance by a party, which was the reason why we could not sever out sin in this case. Snapper v. Johnson also was a very similar case from the Fifth Circuit on that issue, and the court held that if you get a summary judgment against you, that is not voluntary, that's involuntary. But if the plaintiff agrees to voluntarily sever it out, that that is a voluntary act. That did not happen here. That is not involved. Counsel was also asked about stipulate. The point that keeps being raised, that all this stuff about C.E.N., that you didn't explicitly say, hey, we can still appeal against C.E.N. in state court. Hey, C.E.N. was not improperly joined, because when we sued him, we thought all was good. Hey, whether it's time of removal, it's time of filing. Diversity has to exist, is my understanding, time of filing and time of removal. So I want to be clear. Flag v. Stryker does focus on time of removal as well. But here the question is, what is the deal with C.E.N.? And while you talk about improper joinder, do you really raise the points, as Judge Oldham pointed out, that we are now discussing? Well, we raised in Judge McBride's court in our second motion to remand the fact that C.E.N. was a nondiverse party and that they were still a party to the underlying lawsuit. They had not been severed out. That was in the second motion that was within the 30 days of 1447. You said they were still a party. We did. We said that there had been a summary judgment, that it was an involuntary ruling, and that as a result of the involuntary ruling, you still had to count their citizenship. Why didn't you merge those two arguments at the same time? Because when they removed this case, we were coming up on the trial setting. This was like a week before trial. They removed it. I think we filed the very next day, we filed an emergency motion to remand. And, frankly, all we did in that judge was address the grounds they raised. Right. And we didn't address other grounds. And after Judge McBride denied that, then we really got into it because we were still trying to preserve our trial setting. And we got into it, and we raised the involuntary. Let me ask you this. If we were to affirm the trial court's ruling, can you go back to state court and appeal on CEN? I'm just kind of wondering because I don't see how we have jurisdiction over CEN, but I'm wondering how the state court has jurisdiction of CEN. So I'm still wondering what happens to CEN. It's kind of a limbo area as far as being able to appeal the CEN summary judgment, and I would have to look at that judge. It's something I've not seen. Because once the case is over in federal court, the stay created by the removal is lifted. But I don't know that that helps you. I mean, I don't know what that does to the state court case vis-a-vis CEN. But as far as the CEN, I believe they have waived their right to complain about CEN's fraudulent joinder. There's no circuit decision, but there's probably 10, 12 district court opinions which say that if you don't raise it in your removal, notice removal, it's waived. Judge? His argument is, well, we didn't even really know that CEN was in play anymore because of the state court decision, and so we were focused on Storm, and you're the one who raised CEN, so then now we have to deal with if CEN's still a party, then the improper joinder. So their argument would be it's a lot of hoops before we get to improper joinder. We cited Wessel v. Miraglia, which is a Judge McBride opinion, where he said where a party later on tried to deal with a nondiverse party through fraudulent joinder, and Judge McBride in that case, 2004 case, said the court is not persuaded, however, that removal may be sustained on grounds not stated in the original notice of removal. They have an obligation to show jurisdiction exists. They have that obligation, and they have to consider CEN and any other parties that they have to account for. It's not up to me to tell them, well, you forgot this when you need to amend it or whatever. And I know I'm out of time. If I judge, I don't want to ignore your question. And basically we had Cam Cope, who was an expert, who testified that he did a report that showed that the water from the east side flowed because there had been the drainage ditch dammed up by a lane and caused it to overflow the road and flow to the west. We also had Jeff Milburn, who stated his report at 4764-4991-93, the same thing, that the drainage ditch had clogged up and caused the water to flow across the road. And this was, there was testimony by the police officer, the trooper, by the gentleman, the air traffic controller, who was the second person who went off the road into the lake, and by Mr. Hoyt's father, that for a 20-mile stretch, this was the only place where there was ice on the road. And despite that, Durant Court found that it was precipitation that fell and ice accumulated as a result of the meteorological forces of nature. So they had to have a cloud right over this part that dropped it. I'm out of time. I hope I've answered your question. That's okay. Thank you very much. Court will stand in recess for 10 minutes.